IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RITA CHILDS GETSINGER, ) | Civil Action No. 3:10-1078-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on September 18, 2006, alleging disability as of September 14, 2006. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 12, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. The ALJ issued a decision dated April 10, 2009, denying benefits and finding that Plaintiff was not disabled because she was able to perform her past relevant work as an office clerk.

Plaintiff was fifty-five years old at the time of the ALJ's decision. She has associates degrees in business and computer science with past relevant work as an office clerk. Plaintiff alleges disability due to diabetes, fibromyalgia, vertigo, and neuropathy. See Tr. 143.

The ALJ found (Tr. 10-15):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 14, 2006, the alleged onset date (20 CFR 404.1571 *et. seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes, peripheral neuropathy, fibromyalgia, dyslipidemia, and obesity (20 CFR 404.l520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that claimant is restricted to occasional climbing of ropes, ladders, and scaffolds. She must also avoid concentrated exposure to unprotected heights and moving machinery. Claimant must be permitted to sit or stand at will for five minutes of any given one-hour workperiod.

6. The claimant is capable of performing past relevant work as an office clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 14, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On March 23, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-3). Plaintiff then filed this action in the United States District Court on April 28, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v.

Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL RECORD**

Plaintiff has been treated for diabetes mellitus since at least 1993. Tr. 476. In September 2003, Dr. J. Andy Farmer, III, wrote that Plaintiff had poor control of her diabetes and referred her to see if she was a candidate for insulin pump therapy. Tr. 475. Dr. S. Asumani Yeboah (of Carolina Diabetes and Endocrinology, P.A.) examined Plaintiff on October 8, 2003, and assessed uncontrolled diabetes, diabetic neuropathy, and hyperlipidemia. Arrangements were made for insulin pump therapy. Tr. 476-477. Subsequently, Plaintiff's treatment providers observed that Plaintiff's diabetes control was improving. Tr. 330, 467-468.

In January 2004, Plaintiff reported chronic back pain to Dr. Farmer, who noted that the pain seemed to be manageable with medication (Neurontin and occasional Vicodin). Tr. 467-468. In December 2004, Plaintiff reported diffuse aching in her thighs, shoulders, and back. Dr. Farmer assessed Plaintiff with diffuse arthralgia and myalgia. Tr. 461. In June 2005, Dr. Farmer noted that another physician thought Plaintiff had a probable fibromyalgia-type syndrome. Tr. 330. Dr. Farmer wrote in August 2006 that Plaintiff regularly took narcotic medication due to "chronic degenerative back pain." Tr. 229.

In December 2005, Dr. Yeboah noted that Plaintiff's hemoglobin A1c levels had increased due to recent illness, although her blood sugars were doing well. Tr. 326. In March 2006, Plaintiff reported she blacked out approximately two weeks previously while driving. Dr. Farmer assessed Plaintiff with a syncopal episode. Tr. 296.

Plaintiff received a diabetic foot evaluation from Dr. Jackie Avery on May 2006. Dr. Avery counseled Plaintiff regarding diabetic foot care and assessed Plaintiff with a fungal nail infection (onychomycosis), diabetic neuropathy, and diabetic polyneuropathy. Tr. 298-299. In August 2006, Dr. Farmer assessed that Plaintiff had chronic peripheral neuropathy symptoms. Tr. 299. On November 7, 2006, Dr. Dale Van Slooten, a State agency physician, opined that Plaintiff could perform a range of medium work. Tr. 331-338.

On November 17, 2006, Dr. Farmer stated that Plaintiff had depression, and took antidepressant medication, but did not believe she exhibited any work-related limitations in functioning due to depression. Tr. 344. Dr. Yeboah declined to opine whether Plaintiff had functional limitations resulting from a mental impairment. Tr. 375-376. On December 1, 2006, State agency psychologist Larry Clanton opined that Plaintiff did not have a severe mental impairment. Tr. 345-358.

Plaintiff reported she was experiencing "more trouble" with her shoulders on December 5, 2006. Examination revealed that Plaintiff reported pain with range of motion testing of both shoulders, but her shoulders had no deformity. Dr. Farmer assessed Plaintiff with probable rotator cuff tendinitis and administered injections. He also noted that Plaintiff's insulin pump had improved Plaintiff's control of her diabetes. Tr. 364.

On February 7, 2007, Dr. William Crosby, a State agency physician, reviewed Plaintiff's records and opined that she could perform a range of medium work. Tr. 381-388. State agency psychologist Lisa Varner opined that Plaintiff did not have a severe mental impairment on February 14, 2007. Tr. 389-402.

In June 2007, Plaintiff reported difficulty sleeping as well as muscle and joint pain in her neck, shoulders, elbows, knees, hips, and spine. Dr. Farmer noted that he recently adjusted Plaintiff's medications and thought she was "becoming somewhat overmedicated in terms of narcotics." He opined that Plaintiff's diabetes was under "suboptimal" control and noted she had some diabetic neuropathy. He wrote that recent testing rheumatoid arthritis was negative, and a rheumatologist felt that Plaintiff had fibromyalgia. Examination revealed that Plaintiff had diminished range of motion in her shoulders, slight tenderness in her hands, and no tenderness in her wrists and feet. Dr. Farmer assessed Plaintiff with chronic pain syndrome with multiple arthritic joints and spine pain, and adjusted her medication. Tr. 523. Plaintiff reported that she was primarily experiencing pain in her spine in September 2007, but Dr. Farmer did not observe any obvious deformity in her spine. Tr. 522.

Plaintiff was first examined by Dr. Zafar Hossain on December 4, 2007. She complained of pain in almost her entire body, a history of weakness and fatigue, jerky movements, and dyslipidemia. Dr. Zafar Hossain noted that Plaintiff's pain symptoms seemed consistent with fibromyalgia, adjusted her medication, and referred her to Dr. Jason Soriano for a neurological evaluation. Tr. 517-522.

Dr. Soriano's examination revealed that Plaintiff had good attention span and normal language function. She had positive Romberg's sign (swaying of the body when standing with feet

5

close together and eyes closed - see Dorland's Illustrated Medical Dictionary 1702 (30th ed. 2003) and decreased sensation from her toes to her mid-calf, but had intact coordination and reflexes and full muscle strength. No left-sided weakness was noted. Tr. 527-530. An MRI of Plaintiff's neck on December 14, 2007, which was noted to be of poor quality due to movement by Plaintiff, showed degenerative changes at several levels of Plaintiff's cervical spine. There was a broad-based posterior disc bulge at C5-6, but no intrinsic cord lesion or cord compression lesions. Tr. 502-503. An MRI of her brain was within normal limits for someone Plaintiff's age (Tr. 532-533), tilt table testing was unremarkable (Tr. 514), and EEG monitoring was normal (Tr. 508, 504-505, 506-507).

Anita McQuillen, Ph.D., performed a neuropsychological evaluation in January 2008, which included two days of testing. Plaintiff was noted to have a depressed mood, a slow and steady gait, fluent speech, good memory, and linear and logical thought processes. On February 14, 2008, Dr. McQuillen opined that Plaintiff had significant depression with a high level of anxiety and tension. She found that Plaintiff had mild inefficiencies in attention and speed of processing (which increased with distractions or multi-tasking); average or better overall cognitive functioning; normal memory; and strengths in abstract reasoning, confrontation naming, and higher-level problem solving. Dr. McQuillen thought that Plaintiff had a mild cognitive impairment which was probably largely attributable to the effects of medication. Tr. 509-513.

Plaintiff was examined by Dr. Soriano again in late February 2008. He noted that Plaintiff had normal language, full strength, and normal coordination. Plaintiff complained of left-sided clumsiness, but Dr. Soriano did not observe this symptom. He opined that Plaintiff's reported memory problems were likely due to medication side effects and lack of sleep. Tr. 525-526.

Plaintiff was examined by Dr. Kashfia Hossain, a psychiatrist, on March 11, 2008. Plaintiff reported depression; difficulty with memory, attention, and concentration; and constant pain. Dr. Kashfia Hossain noted that Plaintiff was sad; had some impairments in short-term memory, attention, and concentration; was alert and oriented; and had goal-directed thought processes, intact long-term memory, fair insight, and adequate judgment. He assessed Plaintiff with moderate to severe major depressive disorder, generalized anxiety disorder, a cognitive disorder (not otherwise specified), and a GAF of 55 (indicating moderate symptoms or moderate difficulty in social or occupational functioning). Plaintiff's prescription for Cymbalta was increased, Ambien was prescribed for sleep, and Ativan was prescribed for anxiety. Tr. 405-407.

Dr. Geneva Hill of the Piedmont Arthritis Clinic evaluated Plaintiff's joint pain on March 3, 2008. Dr. Hill noted that Plaintiff had diffuse tenderness and decreased abduction in her shoulders; diffuse tenderness and reduced range of motion in her lumbar spine; diffuse tenderness with good range of motion in her cervical spine; and full range of motion in her hands, wrists, elbows, ankles, and knees. Tender points were identified in Plaintiff's neck, shoulder, back, elbow, buttock, and leg. Dr. Hill assessed Plaintiff with polyarthralgias which she thought was most likely fibromyalgia. Tr. 494-497.

Plaintiff returned to Dr. Kashifa Hossain on April 8, 2008. Although she continued to experience depression and anxiety, she reportedly felt "somewhat better, in terms of her mood." She tolerated her medication without side effects and was sleeping well with Ambien. Examination revealed that she was alert and oriented, with a normal mood, fair insight, and adequate judgment. Dr. Kashifa Hossain continued Plaintiff's Cymbalta and Ambien, substituted Xanax for Ativan, and added Provigil. Tr. 442.

7

On April 10, 2008, Plaintiff followed up with Dr. Zafar Hossain regarding fibromyalgia, diabetes, and dyslipidemia. He noted that Plaintiff's insulin pump broke, and she was using insulin injections until the pump could be replaced. Dr. Zafar Hossain wrote that Plaintiff's diabetes was uncontrolled, and he adjusted her medication. Tr. 443. He noted on April 30, 2008, that Plaintiff had recently been hospitalized after she developed acute renal failure in relation to uncontrolled diabetes. Plaintiff reported her insulin pump had not been functioning properly since she was discharged from the hospital. Plaintiff's blood sugars remained uncontrolled, and her triglycerides were elevated. Although Plaintiff continued to report pain, Dr. Zafar Hossain opined that it was not unbearable. He referred Plaintiff back to Dr. Yeboah. Tr. 436, 441.

In early May 2008, Plaintiff reported an episode of unresponsiveness. Dr. Yeboah noted that she did not yet have a replacement insulin pump and assessed Plaintiff with a syncopal episode. Tr. 441. In June 2008, Dr. Zafar Hossain opined that Plaintiff's diabetes was under better control. Plaintiff reported difficulty eating and said she was not taking her antidepressant medication due to nausea. Dr. Hossain assessed Plaintiff with suspected delayed emptying of her stomach (diabetic gastroparesis) and started her on Reglan. Tr. 439-440.

After the ALJ's decision in April 2009, Plaintiff submitted additional medical documentation to the Appeals Council. Tr. 568-612. The Appeals Council found that the additional information did not provide a basis for changing the ALJ's decision. Tr. 1-4. Many of the documents are from the time period prior to the alleged onset of disability (see Tr. 578-84, 592, 602, 605-607, 609). Other documents are discussed below.

On March 1, 2007, Plaintiff was treated at the AnMed Medical Center emergency room for chest pain and shortness of breath. Examination revealed that she had a depressed affect, was alert

8

and oriented, and had no motor sensory deficits. She was diagnosed with an upper respiratory infection and discharged in stable condition the same day. Tr. 577, 598-599. On April 11, 2008, Plaintiff was admitted to the AnMed Medical Center for two days. She was discharged with diagnoses of acute renal failure (resolved by the time of discharge), uncontrolled diabetes (improved by the time of discharge), and altered mental status with unresponsiveness (likely due to a medication side effect). Tr. 604. Plaintiff returned to the AnMed Medical Center emergency room after another episode of syncope on May 1, 2008. Tr. 612. She was assessed with postural hypotension (orthostatic hypotension) on May 25, 2008. Tr. 608.

In May 2009, physician's assistant Kati Carter opined that Plaintiff could lift up to five pounds, could sit and stand for a total of one hour each in an eight hour day, would need to rest or lie down for up to one hour in an eight-hour day, and needed a cane to walk. She thought that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations, and that Plaintiff frequently experienced pain severe enough to interfere with attention and concentration. Ms. Carter thought that Plaintiff's condition worsened following a December 2008 stroke. Tr. 568-574. Chuck Cortez, a manager where Plaintiff used to work, provided a statement in May 2009 discussing Plaintiff's condition during her employment at the company which ended in December 2006. Tr. 575.

## HEARING TESTIMONY

Plaintiff testified that she was unable to work due to fibromyalgia (which caused all-over body pain and limited her ability to sit and walk) and a tendency to pass out (which her doctors could not explain). Tr. 25, 30. She said she could not do her past work as an office clerk due to limitations in sitting and concentration. Tr. 42.

Plaintiff said she previously had back problems, but was currently claiming disability based on pain caused by her fibromyalgia. Tr. 27-28. She testified that her diabetes was somewhat better with treatment. Tr. 26-27. Plaintiff said she had to be very careful when walking due to loss of sensation in her legs and feet. Tr. 40. She previously took Neurontin to treat her neuropathy, but had to stop it because of side effects and was not currently taking any medication for this condition. Tr. 27. Plaintiff said she experienced depression, difficulty sleeping, and fatigue during the day. Tr. 29-30, 38-39.

Plaintiff estimated that she could lift up to ten pounds, stand or walk for ten minutes at a time, and sit for up to fifteen minutes at a time. Tr. 31-32. She laid down a couple of times a day, for twenty to thirty minutes at a time. Tr. 41-2.

As to her daily activities, Plaintiff said she was an avid reader, watched a little television, sewed infrequently, sometimes used a computer or the internet, visited her mother in a nursing home three times a week, and occasionally went to dinner or to see a movie with friends or family. Tr. 33-35. She first testified that she was no longer able to attend church due to limitations in sitting, but later acknowledged she attended at least some church services. Tr. 31, 34. She could pretty much dress herself (although she sometimes needed help with undergarments), and could get in and out of the shower by herself. Tr. 35. Plaintiff said her husband did all of the cooking and "hard" housekeeping, but she made her bed, placed dishes in the dishwasher, picked up things, and dusted. Tr. 36-37. She said she did not drive, but sometimes went to the grocery store to pick up one or two items. Tr. 35-36.

**DISCUSSION**

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence and the ALJ erred in: (1) failing to find that Plaintiff had severe impairments related to depression and cognitive dysfunction; (2) failing to properly evaluate Plaintiff's chronic pain; and (3) determining Plaintiff's residual functional capacity ("RFC") and finding that Plaintiff can perform her past work. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[1] and free from harmful legal error.

A.      Severe Impairment

Plaintiff alleges that the ALJ erred in failing to find that she had severe impairments related to her depression and cognitive dysfunction. The Commissioner contends that Plaintiff failed to meet her burden of establishing she had a severe mental impairment.

It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).   "Basic work activities" are defined as:

The abilities and aptitudes necessary to do most jobs. Examples of these include --

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

11

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Plaintiff has not met her burden of showing she had a severe mental impairment. Although Plaintiff appears to argue that she had severe depression because she was diagnosed with depression, was prescribed medication for depression, underwent testing with a neuropsychologist, and was examined twice by a psychiatrist, she fails to show that her depression was a "severe" impairment for a period of not less than twelve months. As noted by the ALJ, Dr. Farmer (one of Plaintiff's treating physicians) opined that Plaintiff's depression-related symptoms were well controlled by medications. See Tr. 14, 344.

The ALJ properly assessed Plaintiff's functional limitations resulting from her mental impairments by addressing four areas of functioning (activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation). See 20 C.F.R. 404.1520a. The ALJ's determination that Plaintiff had no limitations in these areas is supported by substantial

evidence. The determination that Plaintiff had no limitations in activities of daily living is supported by evidence showing she engaged in a wide array of activities including reading, watching television, using a computer, doing light housework, visiting her mother three times a week, picking up one or two items at the grocery store, and occasionally going out to dinner or to a movie with friends and family. Tr. 12, 14, 34-37. The ALJ's findings concerning social functioning are supported by evidence that Plaintiff regularly visited her mother, went grocery shopping, visited friends and other family members when their schedules permitted, and attended some church services. Tr. 12, 14, 33-34, 36. A lack of limitations in the area of concentration, persistence, or pace is supported by evidence that Plaintiff was able to complete two days of psychological testing with only "mild inefficiencies in attention and speed of processing"; she was an "avid" reader; and she was able to watch television, go to movies, and use a computer. Tr. 12, 14, 33, 35-36, 509. There is no evidence that Plaintiff experienced any episodes of decompensation during the relevant time period.

Even if the ALJ should have found that Plaintiff had a mild limitation in attention, concentration, and pace based on Dr. McQuillen's findings (that Plaintiff had mild inefficiencies in attention and speed of processing - see Tr. 545), there is no indication that this should have mandated a finding of a severe impairment. If a claimant's limitations in the first three areas are rated as "none" or "mild" and the claimant's limitations in the fourth area are rated as "none," then the claimant's mental impairment will generally be found to not be severe. See 20 C.F.R. § 404.1520a(d)(1).

The ALJ's determination that Plaintiff did not have a severe mental impairment is also supported by the findings of the State agency psychologists (see Tr. 345-358, 389-402) that Plaintiff did not have a severe mental impairment. See 20 C.F.R. § 404.1527(f)(2) and 416.927(f)(2); SSR

96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review."). Although Plaintiff was diagnosed with moderate to severe depression by Dr. Kashfia Hossain in March 2008, he noted in April 2008 that she reportedly felt somewhat better, she was alert and oriented, she had a normal mood, and she had adequate judgment. There is no indication that Plaintiff sought further treatment with Dr. Kashfia Hossain after that time. In June 2008, Plaintiff reported that she stopped taking her anti-depressant medication due to nausea. There is no indication, however, that a new medication was prescribed.

Even if the ALJ erred in failing to find Plaintiff's depression severe, such an error is harmless because the ALJ considered her depression during the later steps of his evaluation. Here, the ALJ did not end his analysis at step two,[2] and specifically discussed Plaintiff's depression in evaluating her RFC. See Tr. 14. Plaintiff has not pointed to any evidence in the record which would suggest that any mental impairment resulted in credible functional limitations in excess of the limitations found by the ALJ.

B.     Pain/Credibility

Plaintiff alleges that the ALJ failed to properly evaluate her pain and credibility. The Commissioner contends that the ALJ properly evaluated Plaintiff's subjective complaints and

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

14

reasonably discounted them to the extent they were not consistent with an RFC to perform a range of light work.[3]

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. At step one, the ALJ specifically found that Plaintiff had medically determinable impairments that could have reasonably been expected to produce some of the alleged symptoms. The ALJ then properly considered the medical and non-medical evidence in determining that Plaintiff's subjective complaints were only credible to the

---

[3]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.
20 C.F.R. § 404.1567(b).

15

extent that they reduced Plaintiff's RFC to a range of light work. Tr. 14. The medical evidence, as detailed above, supports the ALJ's determination. There is no indication that any of Plaintiff's treating physicians placed any restrictions on her ability to work that would preclude her from performing a range of light work. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight). As discussed by the ALJ, although the medical records of Drs. Yeboah and Hill indicate inconsistent statements (i.e., those reported by Plaintiff) regarding the extent and intensity of Plaintiff's symptoms, the ALJ found that these were not supported by the objective medical evidence to the extent found in the records of Plaintiff's other treating physicians. Tr. 14.

The ALJ also properly discounted Plaintiff's credibility based on Plaintiff's broad array of daily activities. As noted above, Plaintiff engaged in a wide array of activities including avidly reading, watching television, using a computer, doing light housework, visiting her mother three times per week, picking up one or two items at the grocery store, and occasionally going out to dinner with her family and friends. See Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001) (claimant's daily activities undermined her subjective complaints).

The ALJ also properly discounted Plaintiff's credibility based on inconsistencies in her statements. See Mickles v. Shalala, 29 F.3d at 930. Although Plaintiff testified that she could not sit for more than fifteen minutes at a time (and was unable to attend church for this reason), she testified that she went out to dinner and attended movies, and later acknowledged she attended some church services. See Tr. 12, 14, 31-32, 33-34. Plaintiff claimed limitations in concentration, but said

she was an avid reader, watched television, attended movies, sewed some, and used a computer and the internet. See Tr. 12-14, 33, 35-36.

C. RFC

Plaintiff alleges that the ALJ erred in determining her RFC and finding that she could perform her past work. The Commissioner contends that the ALJ reasonably found that Plaintiff could perform a reduced range of light work.

The ALJ's determination that Plaintiff' had the RFC to perform a range of light work is supported by substantial evidence. Examination findings indicating that Plaintiff had a steady gait, intact coordination and reflexes, and full muscle strength support the ALJ's findings. See Tr. 14, 510, 525, 529-530. None of Plaintiff's treating physicians opined that she had limitations which would preclude a range of light work. The ALJ's assessment is supported by the opinions of the State agency physicians who found that Plaintiff had the capacity to perform a range of medium work and the opinions of the State agency psychologists who found that Plaintiff did not have a severe mental impairment. These RFC findings are also supported by Plaintiff's activities of daily living.

Plaintiff alleges that the ALJ erred in not evaluating the May 2009 opinion of Ms. Carter. This opinion, however, was not rendered until after the ALJ's decision and was not submitted to the ALJ, such that the ALJ could not have reviewed it.[4]

---

[4]Plaintiff has not made any arguments concerning the Appeals Council review of Ms. Carter's opinion. To the extent that such an argument can be implied, however, that the Appeals Council properly discounted this opinion, it is not material in that there is not a reasonable possibility that it would have changed the outcome of the case. See Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991)(The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.").

Here, Ms. Carter's opinion was issued after the ALJ's decision in April 2009 making it less
(continued...)

17

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

At the hearing, the ALJ asked the VE about the demands of Plaintiff's past relevant work. The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform his or her past relevant work. See 20 C.F.R. §§ 404.1560, 416.960. The VE testified that an individual with Plaintiff's RFC could perform Plaintiff's past relevant work as an office clerk. See Tr. 44-46.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has

---

⁴(...continued)
persuasive. See, e.g., Wagner v. Apfel, 201 F.3d 439, 1999 WL 1037573, at *3 (4th Cir. Nov. 16, 1999)(medical reports created after the issuance of an ALJ's decision are less persuasive than opinions issued prior the ALJ's decision). Although Plaintiff states in her brief that Ms. Carter is a physician's assistant with Dr. Yeboah, there is nothing in Ms. Carter's opinion stating that she worked with Dr. Yeboah. Further, as there are no medical records from Ms. Carter, hence, there are no treatment notes from her that support her May 2009 opinion.

Additionally, as a physician's assistant, Ms. Carter is not an acceptable medical source. See SSR 06-03p. She is not a treating source whose medical opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2). Opinions from other medical sources may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physician and mental restrictions. See SSR 06-3p. Although Ms. Carter opined that Plaintiff needed a cane to walk, there is no indication in the medical record or hearing testimony that Plaintiff used a cane. Additionally, the medical record reveals that Plaintiff had intact coordination, intact reflexes, and full muscle strength. See Tr. 510, 525, 529-530.

produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered <u>de</u> <u>novo</u>, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

                                               Joseph R. McCrorey
                                               United States Magistrate Judge

August 29, 2011
Columbia, South Carolina